**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Courtney O'Grady, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| Grand Brands Inc. | |
| Defendant. | |

Plaintiff Courtney O'Grady ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Grand Brands Inc., ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

## NATURE OF THE ACTION

1.      Defendant formulates, manufactures, advertises, and sells its "True Citrus" powdered drink mixes (the "Products")[1] throughout the United States, including in New York. Defendant markets its Products in a systematically misleading manner by conspicuously misrepresenting on the front labels of the Products that they: (1) are "Made from Real [Lemons, Limes, Oranges, Grapefruits]"; and (2) contain "No Artificial Sweeteners, Flavors or

---

[1] The Products include all flavors of Defendant's lines of products as depicted on its website: (1) "Citrus Wedge Replacements"; (2) "Lemonades and Limeades"; and (3) "Kid Drink Mixes." www.truelemon.com (last accessed September 13, 2023)/

Preservatives." Defendant reinforces these misrepresentations by adding vignettes and the names of the fruits in bold letters— as well as the emblem of "True [Lemon, Lime, grapefruit, and Orange]" on top of the vignettes.

2.      Unbeknownst to consumers, however, the Products all share a common falsehood that belies their "True" or "Real" characterization: their predominant ingredient is the synthetically produced citric acid derived from the fermentation of a black mold called Aspergillus niger.  Defendant knows that its citric acid is not naturally sourced, but obscures this crucial piece of information on a subpage of its website rather than on the Products themselves:[2]

**Where does your citric acid come from?**

Citric acid is found in all citrus fruits. However, since there is not enough citrus to produce the amount of citric acid that food manufacturers like us use, our citric acid comes initially from sugar. It is fermented using a Non GMO enzyme. **The Non GMO citric acid we use *mimics* the citric acid found in citrus fruits**

3.      Defendant's most recent labeling of its Products, along with their respective ingredient panels, are depicted below:



Ingredients

Crystallized Lemon [citric acid, lemon oil, lemon juice]. Non-GMO.

Crystallized Lime [citric acid, lime oil, lime juice]. Non-GMO.

Crystallized Orange [citric acid, orange oil, orange juice], sugar. Non-GMO.

Crystallized Grapefruit [citric acid, grapefruit oil, grapefruit juice]. Non-GMO.

---

[2] https://www.truelemon.com/pages/faqs (last accessed September 13, 2023).



## Ingredients

Crystallized Lemon [Citric Acid, Lemon Oil, Lemon Juice], Cane Sugar, Natural Flavor, Stevia Leaf Extract, Beta Carotene (For Color). Non-GMO.

Crystallized Lime [Citric Acid, Lime Oil, Lime Juice], Cane Sugar, Stevia Leaf Extract, Natural Flavor, Turmeric, Caramel and Spirulina (For Color). Non-GMO.




Crystallized Lemon [Citric Acid, Lemon Oil, Lemon Juice], Cane Sugar, Stevia Leaf Extract, Natural Flavor, Beet Juice and Beta-Carotene (For Color). Non-GMO.

Cane Sugar, Crystallized Lemon [Citric Acid, Lemon Oil, Lemon Juice], Natural Flavor, Stevia Leaf Extract, Fruit Juice (For Color). Non-GMO.




Crystallized Lemon [Citric Acid, Lemon Oil, Lemon Juice], Cane Sugar, Stevia Leaf Extract, Natural Flavor, Vegetable Juice (For Color). Non-GMO.

Crystallized Lemon [Citric Acid, Lemon Oil, Lemon Juice], Cane Sugar, Natural Flavor, Stevia Leaf Extract, Beet Powder (For Color). Non-GMO.




Cane Sugar, Crystallized Orange [Citric Acid, Orange Juice, Orange Oil], Natural Flavor, Stevia Leaf Extract, Beet Juice and Beta Carotene (For Color). Non-GMO.

Crystalized Lemon [Citric Acid, Lemon Oil, Lemon Juice], Cane Sugar, Natural Flavor, Stevia Leaf Extract, Vegetable Juice (For Color), Vitamin C (Ascorbic Acid), Non-GMO.




Cane Sugar, Crystallized Lime (Citric Acid, Lime Juice, Lime Oil], Natural Flavor, Stevia Leaf Extract, Beet Juice and Elderberry Juice (For Color). Non-GMO.

Crystallized Lime [Citric Acid, Malic Acid, Lime Oil, Lime Juice], Cane Sugar, Stevia Leaf Extract, Natural Flavor, Vegetable Juice (For Color). Non-GMO.



**Ingredients**

Blue Raspberry: Cane Sugar, Citric Acid, Fruit Powders (Maltodextrin, Blueberry, Raspberry Juice Concentrate), Malic Acid, Vegetable Juice (for color), Stevia Leaf Extract, Natural Flavor, Lemon Juice Solids, Vitamin C (Ascorbic Acid), Vitamin E(Tocopheryl Acetate), Vitamin A (Retinyl Pamitate).

Fruit Punch: Cane Sugar, Fruit Powders (Maltodextrin, Orange Juice Concentrate, Pineapple Juice Concentrate, Cherry), Citric Acid, Vegetable Juice (for color), Malic Acid, Stevia Leaf Extract, Natural Flavor, Lemon Juice Solids, Vitamin C (Ascorbic Acid), Vitamin E(Tocopheryl Acetate), Vitamin A (Retinyl Pamitate).

Groovy Grape: Cane Sugar, Citric Acid, Concord Grape Juice Powder (Concord Grape Juice, Rice Syrup Solids), Malic Acid, Vegetable Juice (For Color), Stevia Leaf Extract, Natural Flavor, Lemon Juice Solids, Vitamin C (Ascorbic Acid), Spirulina Extract (For Color), Vitamin E (Tocopheryl Acetate), Vitamin A (Retinyl Palmitate)

Wild Watermelon: Cane Sugar, Citric Acid, Watermelon Juice Powders (Maltodextrin, Watermelon Juice), Malic Acid, Stevia Leaf Extract, Vegetable Juice (For Color), Lemon Juice Solids, Natural Flavor, Vitamin C (Ascorbic Acid), Vitamin E (Tocopheryl Acetate), Vitamin A (Retinyl Palmitate)

Strawberry Banana: Cane Sugar, Citric Acid, Strawberry Fruit Powder (Maltodextrin, Strawberry) Vegetable Juice (For Color), Stevia Leaf Extract, Natural Flavor, Lemon Juice Solids, Malic Acid, Beta Carotene (For Color), Vitamin C (Ascorbic Acid), Vitamin E (Tocopheryl Acetate), Vitamin A (Retinyl Palmitate)

4.     Defendant's deceptive conduct is further underscored by the fact that similar

citrus powder products with similar representations are true to their representations:





4





5.      As a result of its deceptive conduct, Defendant is, and continues to be, unjustly enriched at the expense of their consumers.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

7.      This Court has personal jurisdiction over Defendant because it conducts substantial business within New York, including the sale, marketing, and advertising of the Products. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this State, including Plaintiff's purchases.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

### <u>PARTIES</u>

9.      Plaintiff Courtney O'Grady is a citizen of New York, who resides in Mount Vernon, New York. Plaintiff purchased Defendant's Products (including, but not limited to, Defendant's "True Lemon Citrus Wedge Replacements" Product) for her personal use on various occasions within the applicable statute of limitations, with her most recent purchases taking place on or about June of 2023. Plaintiff O'Grady made these purchases from online retailers and local grocery stores located in Mount Vernon, New York. Prior to making her purchases, Plaintiff O'Grady saw that the Products were labeled and marketed as being "Made from Real Lemons," named "True lemon," with depictions of lemon wedges and the words "TRUE lemon" prominently displayed on top and described as "Crystallized Lemon." Furthermore, Plaintiff O'Grady saw that the Products were marketed as claiming to contain no "artificial flavors" or "preservatives." Plaintiff O'Grady relied on Defendant's representations when she decided to purchase the Products over comparable products that did not make those claims. Plaintiff O'Grady saw Defendant's representations prior to and at the time of her purchases and understood them as a representation and warranty that the Products were exclusively, or at least predominantly, made from "Real Lemons" and that they contained no "artificial flavors" or "preservatives." Plaintiff O'Grady relied on these representations and warranties in deciding to purchase the Products. Accordingly, those representations and warranties were part of the basis of her bargains, in that she would not have purchased the Products on the same terms had she known that those representations were not true. Furthermore, in making her purchases, Plaintiff

6

O'Grady paid a substantial price premium due to Defendant's false and misleading representations concerning the Products. Plaintiff O'Grady, however, did not receive the benefit of her bargains because those representations were not, in fact, true.

10.     Defendant Grand Brands Inc., is a corporation organized under the laws of Delaware, with its principal place of business located at 11501 Pocomoke Ct, Middle River, Maryland 21220. Defendant manufacturers, packages, labels, advertises, markets, distributes and/or sells the Products in New York and throughout the United States.

## GENERAL ALLEGATIONS

11.     Drinking water is integral to a human's well-being and has recently received attention as one of the easiest ways to prevent many diseases and boost overall well-being.[3] Though simple in nature, Americans find it difficult to drink the recommended amount of water for a simple reason: water is dull and tasteless.

12.     Aware of this consumer demand, companies rushed to produce water enhancers as a "healthier" substitute for sugary drinks. Despite this, however, most of these water enhancers are merely sodas in disguise—substituting sugar with Splenda (recently linked to oxidative stress, cancer, and possibly even DNA damage) and otherwise using a myriad of other synthetic ingredients instead of natural ones.

13.     Although this tactic seemed to work for companies for some time, consumers have increasingly become health-conscious and are seeking products made with clean ingredients. Indeed, recent consumer surveys indicate that approximately "half of Americans say they seek out natural flavors at least some of the time," with most of these respondents looking

---

[3] www.healthline.com/nutrition/7-health-benefits-of-water (last accessed September 14, 2023).

for products that are "not artificial or synthetic."[4] In fact, the second largest contributing factor towards consumer confidence regarding the safety of food is that it be labeled as "Having No Artificial Ingredients."[5]

14.    Defendant's True Lemon brand found the perfect solution to consumers' desire for a tasty and healthy alternative to plain water. By labeling its Products as "True" water enhancers made from "Real" fruit containing no "preservatives," Defendant tactically distinguished itself from other water enhancers that do use natural and/or artificial flavors rather than real fruits. This marketing campaign made Defendant's Products skyrocket, with most of its Products ranking within Amazon's top 10 "Powdered Soft Drink Mixes" (currently ranked as #2)[6] and "Fruit Juice Beverages" (currently ranked as #4).[7]

15.    In theory, Defendant's Products could merit their hype and high level of demand. After all, Defendant's Products seem to offer the closest thing to freshly squeezed fruits— making it a "True" water enhancer. The catch, however, is buried in the details: all of the Products are primarily made with synthetic "citric acid."

16.    Citric acid is naturally occurring when derived from citrus fruits. However, producing natural citric acid is expensive. As such, most citric acid is commercially produced, and manufactured, through extensive chemical processing.[8]  In fact, more than 90 percent of

---

[4] International Food Information Council, *IFIC Survey: From "Chemical-sounding" to "Clean": Consumer Perspectives on Food Ingredients* (June 17, 2021), https://foodinsight.org/ific-survey-from-chemical-sounding-to-clean-consumer-perspectives-on-food-ingredients/ (last accessed September 13, 2023).

[5] International Food Information Council, *2023 Food & Health Survey* (May 23, 2023) at 73, https://foodinsight.org/2023-food-and-health-survey/ (last accessed September 13, 2023).

[6] https://www.amazon.com/gp/bestsellers/grocery/2255564011/ref=pd_zg_hrsr_grocery (last accessed September 13, 2023).

[7] https://www.amazon.com/gp/bestsellers/grocery/2255111011/ref=pd_zg_hrsr_grocery (last accessed September 13, 2023).

[8] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by*

commercially produced citric acid, is manufactured through a processed derivative of black

mold, *Aspergillus niger*, which can cause allergic reactions and diseases in humans.[9]

17.     Instead of staying true to its word, Defendant admits, through an obscure FQA

section of its website, that the citric acid used in the Products is of the synthetic variety:[10]

> **"Where does your citric acid come from?**
>
> Citric acid is found in all citrus fruits. However, **since there is not enough citrus to produce the amount of citric acid that food manufacturers like us use**, our citric acid comes initially from sugar. It is fermented using a Non GMO enzyme. **The Non GMO citric acid we use *mimics* the citric acid found in citrus fruits**"

18.     As explained in greater detail below, Defendant's use of synthetic citric acid not

only breaks its promises to consumers, it also runs afoul of the Food and Drug Administration

("FDA") regulations regarding labeling artificial flavors.

***Defendant's False "Real" Ingredients and/or Flavors Claims***

19.     The Food, Drug, and Cosmetic Act ("FDCA") promulgated by the FDA, provides

that a food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. §

343(a)(1). The FDA recognizes that product names such as the one at issue here are misleading

when they suggest one or more, but not all, of the key ingredients:

> "The labeling of a food which contains two or more ingredients may be misleading
> by reason (among other reasons) of the designation of such food in such labeling
> by a name which includes or suggests the name of one or more but not all such

---

*Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020).

[9] *Id.*; I. Sweis & B. Cressey, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series for four case reports*, 5 TOXICOLOGY REPS., 808-12 (2018); R. Ciriminna et al., *Citric Acid: Emerging Applications of Key Biotechnology Industrial Product*, 11 CHEMISTRY CENT. J. 22 (2017), https://doi.org/10.1186/s13065-017-0251-y (last accessed September 13, 2023); K. Kirimura, Y. Honda, & T. Hattori, *Citric Acid*, 3 COMPREHENSIVE BIOTECHNOLOGY 135 (2011), https://www.sciencedirect.com/science/article/pii/B9780080885049001690 (last accessed September 13, 2023).

[10] www.truelemon.com/pages/faqs (last accessed September 13, 2023).

ingredients, even though the names of all such ingredients are stated elsewhere in the labeling." 21 C.F.R. § 101.18(b).

20.    FDA regulations also require that a food product's name disclose the percentage of ingredients that a product relies on as constituting its "characterizing ingredient:"

"The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case." 21 C.F.R. § 102.5(b).

21.    Based on the FDA's regulatory framework, the fruit ingredients of the Products function as their "characterizing ingredient" because the proportion of real fruits in the Products has a material bearing on their price and consumer perception, as explained in greater detail above. Furthermore, the fruit components of the Product are also their "characterizing ingredient" because the labeling of the Product creates an erroneous impression that real fruit ingredients are present in amounts greater than is actually the case.

22.    Furthermore, although the FDA permits products to make either "direct or indirect representations with respect to the primary recognizable flavor(s)" under 21 C.F.R. § 101.22(i), here, the Products are not merely "flavored" with fruit. Instead, as the front label openly declares, the Products are "Made from Real [Lemons, Limes, Oranges, Grapefruits]." *See supra*, ¶¶ 1-3. And although the Products *may* function as flavors when *added* to water, the Products themselves are not merely flavors.[11] Instead, the Products are composed of a powdered mix of ingredients—which Defendant claims to be the functional equivalent of real fruits. In fact,

---

[11] Any fruit, vegetable, or spice could become a flavor when added to another food item—e.g., salty raspberry dark chocolate—but, independently, those food items are not considered to be flavors.

Defendant goes out of its way to claim that the Products are "True," "Real," and labels them (both in the front and back panels) as "Crystallized [Fruits]." *See supra*, ¶¶ 1-3.

23.     Finally, to the extent that the Products' representations about their "True" and "Real" fruit labels and depictions constitute flavors under the FDA (they do not), consumers would nonetheless expect that the primary sources of those flavors are exclusively, or at least predominately, made with real fruit ingredients, rather than synthetic citric acid. This is especially true given that the Products would run afoul of the FDA's flavoring regulations.

24.     Pursuant to FDA regulations, an ingredient is considered an "artificial flavor" when it is used to:

> "impart flavor, which is *not derived* from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R. § 101.22 (emphasis added).

Defendant's representation that it uses citric acid to "mimic the citric acid found in citrus fruits"[12] along with the fact that "citric acid is predominantly used as a flavoring [] agent, especially in soft drinks,"[13] evidences that the citric acid found in the Products is used to "impart flavor"; and because the black mold (*i.e.*, Aspergillus niger) which Defendant uses to produce its citric acid is not derived from a natural source that is normally used for human food, the Products are all artificially flavored. 21 C.F.R. § 101.22. As such, to the extent that Defendant's representations are considered flavors, all of the Products were mandated to conspicuously state

---

[12] *See supra*, footnote 10.

[13] https://www.healthline.com/nutrition/citric-acid#natural-sources (last accessed September 14. 2023).

that they are "artificially flavored." 21 C.F.R. § 101.22 (c),[14] (i)(2).[15] Aside from its failure to

abide by these regulations, any representations that the Products do not contain artificial flavors

or preservatives are false and misleading. This is true regardless of Defendant's subjective intent.

Although Plaintiff does not seek to enforce the FDA, Defendant's non-compliance illustrates its

misconduct.

**Defendant's False "No Artificial Preservatives" Claims**

25.    The FDA defines a chemical preservative as "any chemical that, when added to

food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars,

vinegars, spices, or oils extracted from spices, substances added to food by direct exposure

thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21

C.F.R. §101.22(a)(5).

26.    The FDA also classifies and identifies citric acid as a preservative in its Overview

of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of how

citric acid is used as a preservative in beverages.[16]

27.    The FDA's view of this matter is further bolstered by a Warning Letter that it sent

to Chiquita Brands International, Inc., indicating that Chiquita's "Pineapple Bites" products were

misbranded within the meaning of section 403(k) of the Food, Drug, and Cosmetic Act, 21

---

[14] "A statement of artificial flavoring…shall be placed …on its container or wrapper…as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food." 21 C.F.R. § 101.22 (c) (emphasis added).

[15] "If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor… the name of the characterizing flavor shall be accompanied by the word(s) "artificial" or "artificially flavored", in letters not less than one-half the height of the letters in the name of the characterizing flavor." 21 C.F.R. § 101.22(i)(2) (emphasis added).

[16] https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors (last accessed September 14, 2023).

U.S.C. § 343(k), because "they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions."[17]

28.    Citric acid functions in beverages as a preservative by serving as an acidulant and as an indirect antioxidant. Citric acid infiltrates and weakens or kills microorganisms through direct antimicrobial effect, lowering a juice product's pH level, thereby combatting and sequestering microorganisms. Citric acid serves these functions regardless of whether it is being added as a flavoring agent.[18]

29.    Industry participants also recognize that citric acid functions as a preservative. For example, one food additives supplier states: "Citric acid is the most commonly used acidulant in the industry. As a food additive or food grade product, citric acid is used as a flavoring and preservative. The buffering properties of citrates are used to control pH and flavor."[19]

30.    Based on the foregoing, Defendant's use of citric acid in its Products renders its "No Artificial Preservatives" [20] representation false and misleading. This is true even if Defendant's subjective intention was to add citric acid to impart taste/tartness to the Products after being added to water—a statement that some manufacturers have recently added to their labeling as a pretext. This conclusion is buttressed by the fact that citric acid can function as a preservative even when it is used only in trace amounts.[21]

---

[17] FDA, *Warning Letter to Chiquita Brands International, Inc. and Fresh Express Incorporated* (Oct. 6, 2010), available at https://wayback.archiveit.org/7993/20170112194314/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2010/ucm228663.htm (last accessed September 14, 2023).

[18] Deman, John M. "Acids as food additives serve a dual purpose, as acidulants and as preservatives." *Principles of food chemistry.* AVI Publishing Co., Inc., 1999, p. 438.

[19] FBC Industries, Inc., *Citrates*, https://fbcindustries.com/citrates/ (last accessed September 14, 2023).

[20] As previously discussed, Defendant's citric acid is synthetically produced through the fermentation process of Aspergillus niger. *See supra*, ¶ 24.

[21] *See* Doores, S., 1993. *Organic acids*. In: Davidson, P.M., et al. (Eds.), *Antimicrobials in Food*

31.     In any event, even if the Products' citric acid and/or ascorbic acids do not, in fact, function as a preservative in the Products, they nonetheless qualify as preservatives given that they have the capacity or tendency to preserve food products. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends* to prevent or retard deterioration,") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or has the power of preserving.")[22]; Oxford English Dictionary (defining "preservative" as "[t]ending to preserve or capable of preserving") (emphasis added).[23]

32.     The global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025. [24] Based on the foregoing, consumers are willing to purchase and pay a premium for healthy and clean food items: like the deceptively advertised Products.

33.     Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action on behalf of herself and all other similarly situated

---

CRC Press, pp. 95-136. http://base.dnsgb.com.ua/files/book/Agriculture/Foods/Antimicrobials-in-Food.pdf (last accessed September 14, 2023).

[22] *Preservative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last accessed September 14, 2023).

[23] *Preservative*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=preservative (last accessed September 14, 2023).

[24] Global Wellness Institute, *The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025*, https://www.hospitalitynet.org/news/4108643.html (last accessed September 14, 2023).

persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3). Specifically, the Classes are defined as:

35.    **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

36.    **New York Subclass:** All persons residing in New York who, during the maximum period of time permitted by the law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

37.    The Classes do not include (1) Defendant, its officers, and/or its directors; or (2) the Judge to whom this case is assigned and the Judge's staff.

38.    Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

39.    ***Community of Interest***: There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

40.    ***Numerosity***: While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. Members of the Classes may also be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

41.    ***Existence and predominance of common questions of law and fact***: Common questions of law and fact exist as to all members of the Classes and predominate over any

questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

(a)    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

(b)    Whether Defendant fraudulently induced Plaintiff and the members of the Classes into purchasing the Products;

(c)    Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof;

(d)    Whether Plaintiff and the members of the Classes are entitled to statutory damages; and

(e)    Whether Plaintiff and the members of the Classes are entitled to attorney's fees and costs.

42.    *Typicality:* The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

43.    *Adequacy*: Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Classes because she has no interests which are adverse to the interests of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained skilled and experienced counsel.

44.    Moreover, the proposed Classes can be maintained because they satisfy both Rule 23(a) and 23(b)(3) because questions of law or fact common to the Classes predominate over any

questions affecting only individual members and a Class Action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)    The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

(b)    If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members of the Classes to seek to redress their claims other than through the procedure of a class action; and

(c)    Absent a class action, Defendant likely will retain the benefits of its wrongdoing, and there would be a failure of justice.

## CAUSES OF ACTION

### COUNT I
**Violation of State Consumer Protection Statues[25]**
**(On Behalf of Plaintiff and the Nationwide Class)**

45.    Plaintiff incorporates by reference each of the allegations contained in the

---

[25] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Civ. Code §1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen Stat. Ann. § 42- 110, et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann.§ 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code. Ann. § 48-601, et seq.; 815 ILCS 501/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen Laws Ann. Ch. 93A, et seq.;  Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code

foregoing paragraphs of this Complaint as though fully set forth herein.

46.    The Consumer Protection Statutes of the Nationwide Class members prohibit the use of deceptive, unfair, and misleading business practices in the conduct of trade or commerce.

47.    By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by representing that the Products: (1) are exclusively, or at least predominately, "Made from Real [Lemons, Limes, Oranges, Grapefruits]" or "True [Lemons, Limes, Oranges, Grapefruits]; and (2) contain "No Artificial Flavors" or "Preservatives."

48.    Despite those representations, however, the Products are (1) primarily made with synthetic "citric acid"; (2) contain artificial flavors; and (3) contain artificial preservatives.

49.    The foregoing deceptive acts and practices were directed at consumers.

50.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

51.    As a result of Defendant's deceptive practices, Plaintiff and the Nationwide Class members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

52.    On behalf of herself and the Nationwide Class members, Plaintiff seeks to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

---

Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1- 5.2(B), et seq.; S.C. Code Ann. §§ 39-5- 10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Code Ann. § 47-18-101, et seq.; Tex. Code Ann., Bus. & Con. § 17.41, et seq.; Utah Code. Ann. § 13-11-175, et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

## COUNT II
### Violation of New York G.B.L. § 349
### (On Behalf of Plaintiff and the New York Subclass)

53.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

54.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

55.     In its sale of Products throughout the state of New York, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

56.     Plaintiff and the New York Subclass members are consumers who purchased the Products from Defendant for their personal use.

57.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by representing that the Products: (1) are exclusively, or at least predominately, "Made from Real [Lemons, Limes, Oranges, Grapefruits]" or "True [Lemons, Limes, Oranges, Grapefruits]; and (2) contain "No Artificial Flavors" or "Preservatives."

58.     Despite those representations, however, the Products are (1) primarily made with synthetic "citric acid"; (2) contain artificial flavors; and (3) contain artificial preservatives.

59.     The foregoing deceptive acts and practices were directed at consumers.

60.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

61.     As a result of Defendant's deceptive practices, Plaintiff and the New York Subclass members suffered an economic injury because they would not have purchased (or paid

a premium for) the Products had they known the veracity of Defendant's misrepresentations.

62.    On behalf of herself and the New York Subclass members, Plaintiff seeks to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT III
### Violation of New York G.B.L. §350
### (On Behalf of Plaintiff and the New York Subclass)

63.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

64.    New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

65.    Defendant violated New York General Business Law § 350 by representing on the packaging of the Products that the Products: (1) are exclusively, or at least predominately, "Made from Real [Lemons, Limes, Oranges, Grapefruits]" or "True [Lemons, Limes, Oranges, Grapefruits]; and (2) contain "No Artificial Flavors" or "Preservatives."

66.    Despite those representations, however, the Products are (1) primarily made with synthetic "citric acid"; (2) contain artificial flavors; and (3) contain artificial preservatives.

67.    The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

68.    Defendant's misrepresentations have resulted in consumer injury or harm to the public interest.

69.    As a result of Defendant's false advertising, Plaintiff and the New York Subclass members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

70.    On behalf of herself and the New York Subclass members, Plaintiff seeks to

recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Classes; and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c)    For compensatory, statutory and punitive damages in amounts to be determined by the Court and/or jury;

(d)    For prejudgment interest on all amounts awarded;

(e)    For an order of restitution and all other forms of equitable monetary relief; and

(f)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated September 14, 2023                          Respectfully submitted,

**GUCOVSCHI ROZENSHTEYN, PLLC**

By:  /s/ Adrian Gucovschi
          Adrian Gucovschi, Esq.

Adrian Gucovschi

140 Broadway, Suite 4667
New York, NY 10005
Tel: (212) 884-4230
adrian@gr-firm.com

*Counsel for Plaintiff and the Classes*